IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-342

MATTHEW FREETAGE, )
)
      Plaintiff, )
  v. ) **COMPLAINT**
) **JURY TRIAL DEMANDED**
DUKE UNIVERSITY HEALTH SYSTEM, )
INC., )
)
      Defendant. )

COMES NOW Plaintiff Matthew Freetage ("Mr. Freetage"), complaining of Defendant Duke University Health System, Inc. ("Defendant"), alleges and says the following:

## INTRODUCTION

1. Defendant fired Mr. Freetage in retaliation for his reports of his supervisor's discriminatory employment practices against African Americans.

2. On September 18, 2020, Mr. Freetage overheard a conversation regarding management's instructions to "clean house" in his department, specifically discussing their intent to fire "colored" workers who they felt were "lazy," which he reported to Defendant's Human Resources Department on September 28, 2020.

3. On December 21, 2020, Mr. Freetage reported to Defendant's Human Resources Department that his African American colleague was being fired because of "severe mistreatment, discrimination and harassment from the management…" As part of that statement, Mr. Freetage reported that his manager had told him to write up "blacks" to "keep them in line."

4. On January 11, 2021, Defendant's manager, who was the subject of Mr. Freetage's complaints, fired Mr. Freetage.

1

## JURISDICTION

5. Mr. Freetage's claim for retaliation arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII").

6. Jurisdiction and venue are proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1343.

7. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

8. Costs and attorney's fees may be awarded pursuant to Title VII, 42 U.S.C. § 2000e-5(k); and Fed. R. Civ. P. 54.

9. The Court should assume supplemental jurisdiction of Mr. Freetage's state law claims because these claims are based on the same operative facts as the discrimination claims over which this Court has jurisdiction, and judicial economy, convenience, and fairness to the parties' demand that the Court assume and exercise jurisdiction over all claims alleged herein.

## PARTIES

10. Mr. Freetage is a citizen of the United States and a resident of Wake Forest, North Carolina.

11. Upon information and belief, Defendant Duke University Health System, Inc. is a corporation duly organized and existing under the laws of the State of North Carolina with its principal office and place of business in Durham, North Carolina.

12. At all times relevant to this Complaint, Mr. Freetage was an "employee" as that term is defined by Title VII.

13. At all times relevant to this Complaint, Defendant was an "employer" as the term is defined in Title VII.

## ADMINISTRATIVE HISTORY

14. On or about March 14, 2021, Mr. Freetage filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

15. The EEOC issued a "Dismissal and Notice of Rights" on May 3, 2022. Mr. Freetage received the May 3, 2022 Dismissal and Notice of Rights letter on the same day. A copy of the May 3, 2022 Dismissal and Notice of Rights letter is attached hereto as Exhibit A.

16. This Complaint is being timely filed within 90 days from the date Mr. Freetage received the Dismissal and Notice of Rights from the EEOC.

17. Mr. Freetage has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## FACTS

18. Defendant hired Mr. Freetage to be an Operations Manager for the Environmental Services Department at Duke Regional Hospital on September 14, 2020.

19. In this position, Mr. Freetage was supervised by Brandon Faw, the Director of Environmental Services at Duke Regional Hospital.

20. During Mr. Freetage's first meeting with Faw, he was asked by Faw whether he had a problem supervising "blacks." After Mr. Freetage responded that he did not have such problems, Faw instructed Mr. Freetage to start writing up "those people" in order to "keep them in line."

21. In another incident, Faw was reviewing job applicants with Mr. Freetage on Facebook. Faw noticed an African American applicant had pink hair and makeup in one picture. Faw held up his phone with the picture and stated "Do you think I want that walking around this place? Delete. This ain't the ghetto."

22. Soon thereafter, on September 18, 2020, Mr. Freetage was summoned to a meeting in the office along with one of his African American colleagues, Amorita Pickering.

23. When Mr. Freetage arrived for the meeting, Operations Manager Maritza Guevara Paredes and Administrative Assistant Kathy Jordan were already talking and Mr. Freetage overheard Paredes say that Faw had ordered her to "clean house" in the department and to fire the "lazy" employees.

24. Paredes specified that she understood Faw's instructions to mean "the colored people" in the department.

25. Shocked by these racist comments, Mr. Freetage mentioned Defendant's diversity training and asked whether that was applicable to these circumstances.

26. Jordan laughed at Mr. Freetage's question and responded "Yeah that's all bullshit. We don't actually do that around here. It's all for show."

27. In a meeting immediately after these comments, Paredes issued a disciplinary action against Pickering.

28. Mr. Freetage reported these incidents to Defendant's Human Resources Department on September 28, 2020.

29. Upon receiving Mr. Freetage's report, Defendant's Human Resources Department assured him that his concerns were a "priority."

30. Nevertheless, neither Paredes, Jordan, nor Faw were disciplined as a result of Mr. Freetage's September 28, 2020 report.

31. Instead, Faw and Paredes began retaliating against Mr. Freetage for making his report.

32. In particular, Faw and Paredes began repeatedly and unfairly criticizing Mr. Freetage'sperformance, including on issues that were not Mr. Freetage's fault.

33. Mr. Freetage again reported this mistreatment to Defendant's Human Resources Department and, again, Defendant took no action against Faw or Paredes.

34. Buoyed by Defendant's continued failure to discipline them, Paredes and Faw continued in their discriminatory employment practices.

35. This time, they fired an African American woman, Brittany Judd, on December 10, 2020 for non-existent disciplinary actions.

36. Believing that Ms. Judd had been a victim of racial discrimination, Mr. Freetage submitted a letter to Defendant's Hearing Committee on December 21, 2020 stating that she "was the subject of severe mistreatment, discrimination and harassment from the management staff…"

37. In addition to the racist behavior described above, Mr. Freetage also reported to the Hearing Committee that he "question[ed] the validity of many of [the disciplinary incidents] after witnessing the extreme acts [he has] seen in [his] short time with" Defendant.

38. Again, Defendant took no disciplinary action against Faw or Paredes in response to Mr. Freetage's December 21, 2020report.

39. Instead, Faw made false reports regarding Mr. Freetage's work performance in his 120-day performance review.

40. Faw then fired Mr. Freetage on January 11, 2021.

## COUNT I – RETALIATION

41. Mr. Freetage hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

42. Title VII prohibits retaliation against employees who oppose discrimination prohibited by the statute.

5

43. Mr. Freetage engaged in protected activity within the meaning of Title VII by reporting the racist and discriminatory conduct of Faw and Paredes.

44. At the time of his reports, Mr. Freetage was meeting all his job expectations.

45. The housekeepers who reported to Mr. Freetage have gone on record to say that he was "an incredible manager," a "good listener," "very professional," and "a manager who seemed like he really cared about his job and employees."

46. Mr. Freetage was punished and terminated from his position with Defendant in retaliation for his protected activity.

47. As a direct and proximate result of Defendant's retaliation, Mr. Freetage suffered and continues to suffer economic losses, pain and suffering, and other nonpecuniary losses.

48. Defendant's actions were intentional, willful, and done in reckless disregard of Mr. Freetage's rights as protected by Title VII.

49. Accordingly, Mr. Freetage is entitled to recover punitive damages from Defendant.

50. Mr. Freetage is entitled to recover his reasonable attorney's fees and costs.

51. As a direct and proximate result of Defendant's discriminatory conduct, Mr. Freetage suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

52. Defendant's actions were intentional, willful, and done in reckless disregard of Mr. Freetage's rights as protected by Title VII.

53. Accordingly, Mr. Freetage is entitled to recover punitive damages from Defendant.

54. Mr. Freetage is entitled to recover his reasonable attorneys' fees and costs.

## COUNT II – WRONGFUL DISCHARGE

55. Mr. Freetage hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

56. The termination of Mr. Freetage's employment was done in violation of the public policy of the State of North Carolina, specifically the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2, *et seq.*

57. Mr. Freetage is entitled to recover from Defendant his compensatory damages as provided by North Carolina law, including, but not limited to, back pay, front pay, benefits of employment, inconvenience, loss of enjoyment of life, and humiliation.

58. Defendant's conduct as set forth herein was malicious and/or willful and wanton, thereby justifying an award of punitive damages.

59. Mr. Freetage is entitled to recover his reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby requests the following relief:

1. Plaintiff has and recovers from Defendant for all economic damages in an amount to be proved at trial;

2. Plaintiff has and recovers from Defendant for all non-economic damages in an amount to be proved at trial;

3. Plaintiff has and recovers from Defendant for punitive damages in an amount to be determined by the jury;

4. All costs, interest, and expenses, including reasonable attorney's fees, be taxed to the Defendant;

5. All issues of fact herein be tried by a jury;

6. Recovery for pre-judgment and post-judgment interest on all amounts awarded herein; and

7. All other relief which this Honorable Court deems just and proper.

This the 5th day of May, 2022.

OSBORN GAMBALE BECKLEY & BUDD PLLC

BY: _____
JOSEPH D. BUDD
N.C. Bar No. 44263
721 W. Morgan St.
Raleigh, North Carolina 27603
joe@counselcarolina.com
919.373.6422
Facsimile: 919.578.3733